**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                               |     |                              |
|-------------------------------|-----|------------------------------|
| **THOMAS P. HEFFERNAN,**      | *   |                              |
|                               | *   |                              |
| **Plaintiff,**                | *   |                              |
| **v.**                        | *   | **Civil Case No. SAG-21-3228** |
|                               | *   |                              |
| **ALEJANDRO N. MAYORKAS,**    | *   |                              |
|                               | *   |                              |
| **Defendant.**                | *   |                              |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Thomas P. Heffernan filed this lawsuit against his employer, Alejandro N. Mayorkas ("Defendant"), the Secretary of the United States Department of Homeland Security, alleging four counts of discrimination: (1) age discrimination in violation of the Age Discrimination in Employment Act, (2) disparate treatment based on age and gender, (3) hostile work environment on the basis of age, and (4) gender discrimination in violation of Title VII. ECF 1. Defendant filed a motion to dismiss or for summary judgment, ECF 19, attaching a voluminous administrative record including declarations and deposition transcripts. Plaintiff opposed the motion, ECF 20, and Defendant filed a reply, ECF 25. This Court has considered the filings and the attached exhibits. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). Defendant's motion, treated as a motion for summary judgment, will be granted.

## I.    BACKGROUND

Plaintiff is a man born in 1961. ECF 19-4 (Heffernan Dep.) at 10. In 2014, he accepted a position as an Assistant Area Port Director (AAPD) at the Port of Baltimore, Baltimore Field Office, which he maintains to this day. *Id.* at 13. From October, 2014 to April, 2018, Dianna

Bowman served as Port Director ("PD") and Plaintiff's first-line supervisor.[1] *Id.* at 14; ECF 19-5 (Bowman Dep.) at 11. From 2017 throughout that same period, the female Director of Field Operations ("DFO"), Casey Durst, served as his second-line supervisor. ECF 19-4 at 15; ECF 19-6 at 1.

An AAPD is a manager in the Office of Field Operations ("OFO"), charged with planning and assigning work to, and evaluating the performance of, subordinate supervisors. ECF 21 at 37–42. The OFO has three core functions: Tactical, Trade, and Passenger Operations. *Id.* Before 2017, management structure at the Port included the PD overseeing three AAPDs, one each in the areas of Trade Operations, Tactical Operations, and Passenger Operations. *Id.* However, in fiscal year 2017, the Port lost supervisory staff, including one of the three AAPDs. ECF 19-5 at 28. Accordingly, the remaining supervisors had to assume temporary assignments to assist other areas of operation. ECF 21 at 50; ECF 19-5 at 28.

In March 2017, an on-site operational review team recommended consolidating and reorganizing the AAPD structure. ECF 19-6 (Durst Decl.) ¶ 7. DFO Durst decided to follow those recommendations, which resulted in changes to Plaintiff's job title and emphasized the subject-matter rather than the locational focus of his position. *Id.* ¶¶ 8–10. Consequently, on April 10, 2017, PD Bowman notified the AAPDs of the Port's institutional shift towards "area coverage" and informed the AAPDs they were expected to provide programmatic oversight in their areas of responsibility. ECF 21 at 50.  However, all Port supervisors remained responsible for providing cross-coverage when necessary. ECF 19-5 at 33.

---

[1] PD Bowman graduated from high school in 1982. ECF 19-5 at 11. Extrapolating from her high school graduation date, PD Bowman would be roughly three years younger than Plaintiff.

In or about May 2017, PD Bowman announced additional staffing changes that would require Plaintiff, who was overseeing Trade Operations, to cover both Trade and Tactical Operations. ECF 21 at 49; ECF 19-6 ¶ 10; ECF 19-4 at 31:19–25. Shortly before that time, Plaintiff's subordinate Import and Entry Specialists had been transferred out from under his direct management, reducing his supervisory workload but also reducing the number of persons to handle Trade Operations tasks. ECF 19-5 at 20–21, 28–29; ECF 19-6 ¶ 9.

On July 25, 2017, Plaintiff received a letter of reprimand for failing to complete five assignments, after two test failures by the officers he supervised, and after evaluation of the Operational Review Team. ECF 21 at 291–93. The letter of reprimand is considered to be a "first offense" in the disciplinary system, such that any subsequent misconduct constitutes a second offense and is subject to more serious sanctions. ECF 19-8 at 7.

In September 2017, PD Bowman suggested that Plaintiff voluntarily accept a downgrade to a GS-13 Chief CBP Officer position. ECF 21 at 34. Plaintiff declined the voluntary downgrade and continued, at all relevant times, to serve as an AAPD at his same rate of pay. ECF 19-4 at 106–07.

On or about February 15, 2018, PD Bowman proposed that Plaintiff be suspended for fourteen days for Failure to Follow Supervisory Instructions. ECF 21 at 29–32. The proposal cited seven specific failures, along with CBP Standards of Conduct, Directive No. 51735-013A, Section 6.7.2, which states, "Employees are required to perform their duties, . . . respond readily to the lawful direction of their supervisors, and follow Agency policies and procedures." *Id.* at 31. In CBP's Table of Offenses and Penalties, a 14-day suspension is listed for a second/subsequent offense. ECF 19-8 at 7.

Plaintiff responded to the notice of proposed suspension, both orally and in writing. ECF 21 at 77–107. In so doing, he conceded that he had difficulty meeting PD Bowman's assignment deadlines, that he turned in assignments late, and sometimes did not complete them at all, due to a lack of resources allotted to him after the reorganization. *Id.* at 77. On May 29, 2018, DFO Durst decided not to sustain the charges. ECF 21 at 33. The matter was closed without disciplinary action. *Id.*

On March 21, 2018, Plaintiff participated in a conference call with PD Bowman and three other employees of the Baltimore Field Office. ECF 19-4 at 183–84; 19-5 at 229–34. During a discussion of the planned facility repairs at a local marine terminal, Plaintiff expressed disagreement with the planned repairs. *Id.* PD Bowman then scolded Plaintiff and dismissed him from the call to return to his operational tasks. *Id.*

On April 19, 2018, the Joint Intake Center received Plaintiff's allegations of age and gender discrimination by PD Bowman, which were identical to the claims in the instant complaint. ECF 19-9. After full investigation, the reviewing Agency official did not find discrimination and recommended that the case be closed. ECF 19-10.

In connection with this motion, three of Plaintiff's former co-workers, who are now retired, submitted sworn declarations. Two male co-workers (David E. Billips and Dennis Clark) identically stated, verbatim, that PD Bowman:

> bridled her male subordinates with extra work and responsibilities – oftentimes making the male supervisors perform extra duties and responsibilities while temporarily reducing their staff – then holding the male supervisors accountable to explain problems attributable to their inability to essentially be in two places at one time.

ECF 27 (Billips Decl.) ¶ 5; ECF 27-1 (Clark Decl.) ¶ 3.[2] Billips also described an incident in which PD Bowman called him a "disgruntled employee." ECF 27 ¶ 6. Clark alleged that PD Bowman hired a "much less qualified female candidate" over him for a position as Field Training Officer, and opposed his selection for two temporary duty assignments, one of which he was awarded. ECF 27-1 ¶¶ 4–6. The third former co-worker, Paula Rigby, is female. ECF 27-2 ¶ 1. Rigby describes PD Bowman as "untrustworthy and seemingly incapable of being honest and forthright," and asserts that PD Bowman denied having conversations with her about the needs of her office. *Id.* ¶ 6. Rigby alleges that PD Bowman unfairly blamed Plaintiff for failings of Rigby's office, even during periods when Plaintiff was not her supervisor. *Id.* ¶ 7. She also alleges that PD Bowman spoke to Plaintiff "in a very disrespectful and condescending manner." *Id.* ¶ 8.

## II.   LEGAL STANDARDS

Defendant filed this motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, a motion for summary judgment. ECF 19.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to

---

[2] One of the two declarants making this assertion about treatment of male supervisors retired in the capacity of a GS-12 Customs and Border Protection Officer, with no indication that he served in any supervisory role. ECF 27-1 ¶ 2.

present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without the needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to

[the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Here, Plaintiff has not filed a Rule 56(d) affidavit and has not suggested that additional discovery is necessary. Instead, Plaintiff cites to evidence in the existing record, and has submitted additional evidence, to argue that there are genuine issues of material fact. Thus, it appears Plaintiff concedes that application of the summary judgment standard is appropriate.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material fact. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support an element of the

non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)). Finally, where a movant has met the initial burden of demonstrating to the court that there is no genuine issue of material fact, the nonmoving party may not rest on the allegations averred in her pleadings. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Summary judgment shall therefore be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Casey v. Geek Squad*, 823 F. Supp. 2d at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348–49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex*, 477 U.S. at 322–23; *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

III.    ANALYSIS

Plaintiff generally frames his opposition in terms of the "material-fact disputes" he believes exist. This Court, however, will analyze the case instead in accordance with the counts in Plaintiff's Complaint, because the elements of those counts govern which facts are actually material to the disposition of his claims.[3] This Court notes at the outset that Count Two, alleging "disparate treatment" on the basis of age and gender, appears entirely duplicative of Count One, which alleges age discrimination, and Count Four, which alleges gender discrimination. Thus, this Court will not separately address the merits of Count Two.

### A.  Age and Gender Discrimination (Counts One and Four)

Plaintiff has not alleged or provided any direct evidence of discrimination, in the sense of age or gender-based comments by his supervisors suggesting discriminatory animus. Thus, to establish a claim of discriminatory treatment, in the absence of any direct evidence of discrimination, Plaintiff would have to rely on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4] That framework requires a plaintiff to establish a prima facie case, which requires proof of "(1) membership in a protected class; (2) satisfactory job

---

[3] Based on the review of the elements, the facts Plaintiff contends are disputed are not in fact material. They include: (1) whether PD Bowman treated males worse than females; (2) whether PD Bowman lied about having prior EEO complaints; (3) what date Rigby came back under PD Bowman's supervision; and (4) PD Bowman's motivation for scolding him on the conference call. ECF 20. As the analysis above makes clear, none of those facts would create the existence of an adverse employment action or the existence of a similarly situated employee treated differently in a relevant circumstance.

[4] Although *McDonnell Douglas* involved a claim of racial discrimination in violation of Title VII, the Fourth Circuit has used its framework to consider cases involving ADEA age discrimination claims. *See Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019); *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006). *But see Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 n.2 (2009) (stating that the Supreme Court "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . utilized in Title VII cases is appropriate in the ADEA context").

performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). If a plaintiff meets her burden to establish a prima facie case of discrimination, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the disputed employment action. *See Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255–56 (1981). Where a defendant successfully rebuts the presumption raised by the plaintiff's prima facie case, then the plaintiff has the burden of proof to establish "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 253. And the burden as to Plaintiff's ADEA claim is even greater, because a plaintiff must prove that his age was a "but-for" cause of his employer's adverse decisions. *Gross*, 557 U.S. at 176 (citing *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 652–55 (2008); *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 63–64, and n.14 (2007)). In other words, Plaintiff must show that even if there were other contributing factors, the alleged adverse actions would not have occurred except for age discrimination.

Here, Plaintiff is unable to establish a prima facie case of disparate treatment as to most of the conduct at issue. An adverse employment action is one that produces "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see also James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) ("Absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not

present in the old position.") (internal citations omitted). Several of Plaintiff's allegations did not have any impact on his work standing or employment status: the suggestion that he take a voluntary downgrade to his position, which he declined; the proposed suspension, which never happened; his dismissal from the conference call about the repairs to the marine terminal, and the attribution of "credit" or "blame" for tasks Rigby's office handled. Even the letter of reprimand, by itself, does not constitute an adverse employment action. *See, e.g.*, *Muldrow v. Blank*, No. 13-1200, 2014 WL 938475, at *10 (D. Md. Mar. 10, 2014); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 423 (D. Md. 2006); *Allen v. Rumsfeld*, 273 F. Supp. 2d 695, 705 (D. Md. 2003). The record contains no indication that Plaintiff suffered any detrimental effect because of the letter of reprimand.[5]

The only supervisory actions, then, that altered the conditions of Plaintiff's employment were the transferal of subordinate supervisors from his management and the addition of responsibility for him to oversee Tactical Operations. Plaintiff has asserted, and has proffered conclusory declarations from other employees, suggesting that these types of decisions to increase workload affected male supervisors disproportionately as compared to female supervisors. But these general assertions do not establish "different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190. He has not pointed to a female supervisor who was spared any effect from the reorganizations that caused him to have to take on additional responsibility while having fewer supervisors to complete the necessary tasks.[6] Thus, his effort at

---

[5] Even if the letter of reprimand constituted an adverse employment action, the fact that Plaintiff has conceded that he did not in fact complete the tasks cited in the letter would make it impossible for him to show that the employer's legitimate non-discriminatory basis for sending the letter was pretextual.

[6] Part of the reason may be that the other supervisors at Plaintiff's senior AAPD level appear to be men, which undercuts the general contention that women were favored for promotion, and makes it impossible to show that the changes to his AAPD duties were gender-based. ECF 19-4 at 31 (Heffernan Dep. listing AAPDs as "Steve Dearborn, John Peters, and I").

establishing a prima facie case as to the changes to his job duties fails because he has no evidence of a valid comparator treated differently.

Even had Plaintiff mounted a prima facie case of discrimination with respect to the changes to his duties, the agency has proffered evidence that the reduction in Plaintiff's supervisory staff and the increase in his responsibilities derived from legitimate, non-discriminatory reasons – *i.e.*, the departure of the supervisory workforce and a department-wide reorganization. Plaintiff has offered no evidence that those reasons were untrue or pretextual.

Finally, Plaintiff's age-based discrimination claim is even less developed than his claim of sex-based discrimination. Plaintiff does not even offer broad, conclusory statements about the treatment of younger employees, and certainly has not cited any similarly situated younger employee who received disparate treatment. Plaintiff's evidence, therefore, does not approach proof of "but-for" causation as would be necessary to prove age discrimination. Summary judgment is warranted as to both Counts One and Four (and the duplicative allegations in Count Two).

### B.  Hostile Work Environment (Count Three)

In Count Three, Plaintiff alleges that Defendant subjected him to a hostile work environment, which exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted). To establish a claim for a hostile work environment, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's [age or sex]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable

to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)) (alteration and internal quotation marks omitted).  The severity and pervasiveness of harassment is assessed "from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (internal quotation marks omitted).

However, not every highly unpleasant or even abusive workplace amounts to a "hostile work environment" under the law. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) ("[C]omplaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, [or] a routine difference of opinion and personality conflict with [one's] supervisor . . .  are not actionable.") (internal citations and quotations omitted); *see also Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (finding a workplace dispute and "some perhaps callous behavior by her superiors" insufficient for a plaintiff to establish severe or pervasive activity, even at the Rule 12(b)(6) stage); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (determining that "disrespectful, frustrating, critical, and unpleasant" workplace interactions do not create a hostile work environment). Although Plaintiff has described an unpleasant work environment, this general unpleasantness cannot be determined to be "sufficiently severe or pervasive" to alter his conditions of employment.

Even if Plaintiff did present evidence of sufficient workplace hostility, one of the elements a plaintiff must prove for a hostile work environment claim is that "the harassment was based on her protected status." *See, e.g.*, *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (dismissing hostile environment claim where the plaintiff's superior "never made any derogatory comments about [plaintiff's] race or age, and nothing about his conduct suggests it was based on these factors."). This case presents a quintessential example of an unpleasant work environment. But the

record is devoid of sufficient fact-based evidence that the unpleasantness derived from Plaintiff's age or sex. There is no evidence of any disparaging age- or sex-based comments. The regular use of insulting, disparaging, or condescending language by a supervisor does not create a hostile work environment, absent more particularized facts relating that less-than-optimal supervisory style to some protected class. The only evidence here consists of isolated incidents in which PD Bowman insulted her subordinates, along with generalized or hearsay-based assertions that PD Bowman "treats women better than men."[7] Such conclusory assertions by a small handful of individuals do not suffice to establish either (1) that the motivation for PD Bowman's unfavorable treatment of those persons stemmed from their genders or age, as opposed to some other basis for personality conflict, or (2) that the unwelcome conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment. Thus, Plaintiff has not created a genuine issue of material fact as to the viability of his hostile work environment claim, and judgment will be granted in favor of Defendant.

---

[7] For example, at his deposition, Plaintiff asserted that two older male employees, Kevin Murphy and John Peters, "were not given an end of year award that they deserved" and instead the award was given to a female employee. ECF 27-3 at 25. But he subsequently acknowledged that Bowman did not give Mr. Murphy and Mr. Peters their awards for reasons other than their sex or age. *Id.* at 27. This incident illustrates the difficulty in trying, as Plaintiff attempts, to use events about which he has only incomplete secondhand knowledge to impute discriminatory motive to his supervisor. Her treatment of other employees, who happen to be male or happen to be older, may be based on factors entirely unrelated to their sex or age. And the employees themselves do not cite a long litany of discriminatory treatment against them, but each only mentions one or two incidents that are either relatively benign (*e.g.*, calling him a "disgruntled employee"), ECF 27 ¶ 6, or speculative (the reasons a promotion was not awarded), ECF 27-3 at 29. Ultimately, the question is not what PD Bowman may or may not have done to other individuals, but whether Plaintiff has established that his conditions of employment were altered by a hostile work environment on the basis of his age or sex.

## IV.     CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss or for Summary Judgment, ECF 19, will be GRANTED and judgment will enter in favor of Defendant. A separate Order will be filed herewith, and the Clerk will be directed to CLOSE this case.

Dated: January 31, 2023                                             /s/
                                                        Stephanie A. Gallagher
                                                        United States District Judge